IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| TIMOTHY L. BLIXSETH, | ) | CV 11–85–M–DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| STEPHEN BROWN, an individual; | ) | |
| GARLINGTON, LOHN & ROBINSON, | ) | |
| PLLP, a Montana professional limited | ) | |
| liability partnership; JAMES A. PATTEN, | ) | |
| an individual; PATTEN PETERMAN | ) | |
| BEKKEDAHL & GREEN, PLLC, a | ) | |
| Montana professional limited liability | ) | |
| company; J. THOMAS BECKETT, an | ) | |
| individual; PARSONS BEHLE & | ) | |
| LATIMER, a Utah professional | ) | |
| corporation; THOMAS L. | ) | |
| HUTCHINSON, an individual; | ) | |
| BULLIVANT, HOUSER, BAILEY, P.C., | ) | |
| an Oregon professional corporation; | ) | |
| SAMUEL T. BYRNE, an individual; | ) | |
| CROSSHARBOR CAPITAL PARTNERS | ) | |
| LLC, a Delaware limited liability | ) | |
| company; and JOHN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Timothy Blixseth filed this lawsuit alleging that his former attorney,

1

Defendant Steven Brown and his law firm,[1] engaged in various misconduct when he sat as chair of the Unsecured Creditors Committee in Blixseth's bankruptcy proceedings. Blixseth claims that Brown's co-defendants conspired with Brown and aided and abetted him. The defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. The defendants' motion to dismiss for lack of subject matter jurisdiction is well taken in my view. As a result, it is unnecessary to address whether Blixseth has stated a claim for which relief may be granted.

## BACKGROUND

The facts underlying this case are storied and complex. The parties have litigated myriad issues before Bankruptcy Judge Kirscher, who thoroughly recounted the factual background of this case in *Yellowstone Mt. Club v. Official Comm. of Unsecured Creditors*, 415 B.R. 769 (Bankr. D. Mont. 2009) and *Yellowstone Mt. Club, LLC v. Kirschner*, 436 B.R. 598 (Bankr. D. Mont. 2010).

Blixseth brings several claims against Brown, including legal malpractice, breach of fiduciary duty, breach of contract, fraud, equitable indemnity, comparative indemnity, and contribution.

---

[1] In addition to the attorney defendants in this case, Mr. Blixseth is also suing the attorneys' law firms. For the sake of brevity, though, the Court refers only to the attorneys in this order.

The thrust of his complaint is that Attorney Brown wrongfully sat as Chair of the Unsecured Creditors Committee and engaged in misconduct while he was Chair. Brown represented Blixseth in various pre-petition matters, including a loan transaction with Credit Suisse and Blixseth's divorce negotiations with his wife, Edra. Blixseth claims that, as Chair of the Committee, Brown took positions that conflicted with the advice that he had previously given Blixseth in these matters and that he used confidential client information to Blixseth's detriment. For example, Blixseth claims that Brown initially approved the use of the Credit Suisse loan proceeds and the inclusion of a release in the marital settlement agreement but then reneged on those positions once he became Chair of the Committee. He also claims that one result of Brown's conduct was that CrossHarbor Capital Partners—which Blixseth claims aided and abetted Brown—was able to purchase the Yellowstone Club at a substantially discounted cost because of the breach.

As part of the bankruptcy proceedings, the Bankruptcy Court addressed the Credit Suisse loan and the marital settlement agreement and concluded that (1) Mr. Blixseth fraudulently misappropriated the proceeds from the Credit Suisse loan and (2) the release in the marital settlement agreement was fraudulent. *Yellowstone Mt. Club*, 436 B.R. 598. Blixseth now claims that Brown, on account of his bad

legal advice, should indemnify him for the Bankruptcy Court's judgment.

Aside from Mr. Brown, his law firm, and CrossHarbor and its agent (Samuel Byrne), Blixseth names three other defendant attorneys and their law firms: James Patten (Patten Peterman Bekkedahl & Green, PLLC), J. Thomas Beckett (Parsons Behle & Latimer), and Thomas Hutchinson (Bullivant, Houser, Bailey, P.C.). Each of these attorneys represented different entities involved in the bankruptcy proceedings. His claims are that Brown's attorney co-defendants conspired with Brown and aided and abetted him to Blixseth's detriment.

Because the parties are familiar with the facts of this case, they are restated here only when necessary to explain the Court's decision.

### ANALYSIS

The attorney defendants[2] argue that this Court does not have subject matter jurisdiction because Blixseth did not first seek leave from the Bankruptcy Court, under the *Barton* Doctrine, before filing this lawsuit. I agree. The *Barton* Doctrine

---

[2] Defendant Samuel Byrne of CrossHarbor Capital Partners does not argue that the *Barton* Doctrine applies here, but, since the *Barton* Doctrine is jurisdictional, the Court must nevertheless determine whether it applies to Mr. Blixseth's claims against Mr. Byrne. *See Crown Vantage, Inc. v. Fort James Corp.*, 421 F.3d 963, 970 (9th Cir. 2005) (observing that the *Barton* Doctrine is jurisdictional); *McDaniel v. Blust*, ___ F.3d ___, 2012 WL 401591 at *1–*3 (4th Cir. Feb. 9, 2012) (same); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648–49 (2012) (observing that courts must sua sponte address their subject matter jurisdiction).

applies to all of Blixseth's claims. Since Blixseth has not sought leave from the bankruptcy court to file his claims here, the district court does not have subject matter jurisdiction over them.

### A.   The *Barton* Doctrine

The *Barton* Doctrine is derived from the United States Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126 (1881). It requires a party to "first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Crown Vantage, Inc. v. Fort James Corp.*, 421 F.3d 963, 970 (9th Cir. 2005) (discussing *Barton*). If the Bankruptcy Court has not granted leave, then other courts do not have subject matter jurisdiction. *Id.* at 971; *see also McDaniel v. Blust*, ___ F.3d ___, 2012 WL 401591 at *1–*3 (4th Cir. Feb. 9, 2012).

The purpose of the *Barton* Doctrine is to centralize bankruptcy litigation, which helps avoid inconsistent rulings from different courts and ensures that the forum most familiar with the case—the bankruptcy court—presides over related claims. *See generally Crown Vantage*, 421 F.3d 963. That concern is particularly relevant here, since the Bankruptcy Court has addressed or is addressing issues that are similar (if not the same) to those presented in Blixseth's complaint. If this

Court were to now intercede and decide the merits of Blixseth's claims, it would

run the risk of frustrating the bankruptcy proceedings through a collateral attack.

The *Barton* Doctrine also enables the bankruptcy court to keep a watchful

eye on court-appointed or -approved officers. As Judge Posner described:

> Just like an equity receiver, a trustee in bankruptcy is working in effect
> for the court that appointed or approved him, administering property that
> has come under the court's control by virtue of the Bankruptcy Code. If
> he is burdened with having to defend against suits by litigants
> disappointed by his actions on the court's behalf, his work for the court
> will be impeded.
>
> This concern is most acute when suit is brought against the trustee while
> the bankruptcy proceeding is still going on. The threat of his being
> distracted or intimidated is then very great . . . . Without the [*Barton*
> Doctrine], trusteeship will become a more irksome duty, and so it will
> be harder for courts to find competent people to appoint as trustees.
> Trustees will have to pay higher malpractice premiums, and this will
> make the administration of the bankruptcy laws more expensive (and the
> expense of bankruptcy is already a source of considerable concern).
> Furthermore, requiring that leave to sue be sought enables bankruptcy
> judges to monitor the work of the trustees more effectively. It does this
> by compelling suits growing out of that work to be as it were prefiled
> before the bankruptcy judge that made the appointment; this helps the
> judge decide whether to approve this trustee in a subsequent case.

*Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *see also Crown Vantage*, 421

F.3d at 970–71; *McDaniel*, __ F.3d __, 2012 WL 401591 at *3–*4; *Carter v.*

*Rodgers*, 220 F.3d 1249, 1252–53 (11th Cir. 2000).

The *Barton* Doctrine generally applies if three conditions are met: (1) the

6

plaintiff must be attempting to "initiate[ ] an action in another forum" (2) "against a bankruptcy trustee or other officer appointed by the bankruptcy court" (3) "for acts done in the officer's official capacity." *Crown Vantage*, 421 F.3d at 970. Each of these conditions is met here.

First, the District Court is a different forum than the Bankruptcy Court for purposes of the *Barton* Doctrine. This is true despite the fact that a bankruptcy court's jurisdiction is derivative of the district court's. 28 U.S.C. §§ 157, 1334; *Kashani v. Fulton*, 190 B.R. 875 (B.A.P. 9th Cir. 1995); *In re Miles*, 430 F.3d 1083, 1087 (9th Cir. 2005). In *Kashani,* the Bankruptcy Appellate Panel of the Ninth Circuit explained:

> The Debtors have argued on appeal that the requirement for leave to sue the Trustee does not apply in either the bankruptcy court or the district court, because each court would qualify as the appointing court by virtue of the jurisdiction conferred upon the district court under 28 U.S.C. § 1334 and the referral of the district court's jurisdiction to the bankruptcy court by way of 28 U.S.C. § 157(a). While it is true that 28 U.S.C. § 157(a) does allow the district court to refer jurisdiction to the bankruptcy court, both courts cannot concurrently preside over the same aspects of the case. Once the district court refers the case to the bankruptcy court, unless the district court withdraws that reference, in whole or in part pursuant to 28 U.S.C. § 157(d), the case is within the subject matter jurisdiction of the bankruptcy court. The district court, in any federal district, or a bankruptcy court in any district other than the Southern District of California would, in the present case, be classified as a court other than the appointing court.
>
> We conclude that leave to sue the trustee is required to sue in those

federal courts other than the bankruptcy court which actually approves
the trustee's appointment.

Other courts, relying on *Kashani*, have reached the same conclusion. *See e.g.*
*Carter*, 220 F.3d at 1252; *Posin v. Sheehan*, 2011 WL 3022305 at \*2 (N.D. W. Va.
July 22, 2011) ("Courts applying the *Barton* Doctrine have held that the district
court in the same federal district as the appointing bankruptcy court is considered
a court other than the appointing court for purposes of determining subject matter
jurisdiction. *See* [*Kashani*, 190 B.R. at 884]"); *Schafler v. Field*, 2001 WL
34553964 at \*3 (D. Md. 2001) (same), *aff'd*, 26 Fed. Appx. 315 (4th Cir. Feb. 5,
2002); *see also Harris*, 590 F.3d at 741–42; *In re Ben Franklin Retail Stores, Inc.*,
231 B.R. 717, 720 (Bankr. N.D. Ill. 1999)).

Second, Mr. Brown, as Chair of the Unsecured Creditors Committee, was a
"court-approved" officer. The plain language of the *Barton* Doctrine suggests that
the Doctrine applies only to court "appointed" officers, *Crown Vantage*, 421 F.3d
at 970, but courts have extended *Barton* to include court "approved" officers, *see*
*e.g. Carter*, 220 F.3d at 1252 n.4. In *Carter*, the Eleventh Circuit addressed the
question of whether *Barton* applies to trustees appointed by the United States
Treasury and held:

> In this case, Defendants . . . were not court "appointed," but rather court
> "approved." We find this distinction irrelevant, and hold that these court

approved officers functioned as the equivalent of court appointed officers for purposes of the *Barton* Doctrine.

*Id.* (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)); *accord Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009). The Ninth Circuit has not yet addressed this question, nor has it (or any other court, for that matter) addressed a lawsuit against a member of an unsecured creditors committee. But the Eleventh Circuit's logic applies here. In the past, bankruptcy courts were responsible for appointing members of an unsecured creditors committee. *See generally In re Barney's, Inc.*, 197 B.R. 431 (Bankr. S.D.N.Y. 1996). But, now, the United States Treasury has responsibility for that task. *See* 11 U.S.C. § 1102(a)(1). Since the United States Treasury's appointments are subject to the bankruptcy court's approval, *see* 11 U.S.C. § 1102(a)(4), committee members—like Mr. Brown here—are "functionally equivalent" to court-appointed officers. *Lawrence*, 573 F.3d at 1269; *Carter*, 220 F.3d at 1252 n.4.

*Barton* applies with equal force to all of Brown's co-defendants because the nature of Blixseth's claims against them is based solely on their alleged conspiracy with Brown or their aiding and abetting him while he was Chair of the Unsecured Creditors Committee. *See e.g. McDaniel*, __ F.3d __, 2012 WL 401591. Absent the alleged wrongful conduct of Brown, as Chair of the Committee, Blixseth has no

9

claim against the co-defendants. *See e.g. Hughes v. Pullman*, 36 P.3d 339 (Mont. 2001) (dismissing a conspiracy claim when the underlying tort claim had been dismissed); *see also Peschel v. City of Missoula*, 664 F. Supp. 2d 1149, 1173 (D. Mont. 2009); *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010) ("As with civil conspiracy, plaintiffs alleging aiding and abetting must prove an underlying tort that defendants allegedly facilitated; it goes without saying that individuals cannot aid and abet themselves." (citations omitted)).

Third, all of Blixseth claims are based on Brown's alleged misconduct as Chair of the Unsecured Creditors Committee. *Carter*, 220 F.3d 1249. Some of Brown's alleged misconduct occurred before he was named Chair of the Unsecured Creditors Committee, but the torts did not accrue until he was Chair. For example, Blixseth alleges that Brown gave him bad legal advice in the Credit Suisse loan transaction and the marriage settlement agreement with Blixseth's former wife, Edra. But, as Blixseth apparently acknowledges, the damages that he suffered as a result of that legal advice (including any future damages for lost business opportunities) occurred only as a result of the bankruptcy proceedings and the positions that Brown took as Chair of the Committee. In particular, Blixseth claims that Brown, as Chair of the Committee, used information from his previous

10

representation of Mr. Blixseth against Mr. Blixseth. And makes the further assertion that it was Brown's bad legal advice and the positions he took as Chair of the Committee that caused the Bankruptcy Court to conclude that Blixseth had committed fraud. *See generally Yellowstone Mt. Club*, 436 B.R. 598. Even though some of Blixseth's claims are based on advice that Brown gave him before the bankruptcy proceedings, his claims accrued only as a result of the bankruptcy proceedings and Brown's legal actions as Chair of the Committee.

Blixseth argues that the *Barton* Doctrine does not apply to Brown's acts because they were ultra vires and, therefore, not "done in the officer's official capacity." It is an assertion but he has not met his burden of showing that the acts were ultra vires. Even so, the *Barton* Doctrine applies to allegations of intentional misconduct or fraud. *See McDaniel*, __ F.3d __, 2012 WL 401591, *4 ("[B]ankruptcy trustees and their counsel require protection against suits [under the *Barton* Doctrine] that are based on unfounded allegations regardless of whether there is a claim that the alleged wrongdoing was intentional. . . . And, the need for bankruptcy courts to be 'kept in the loop' so that they make appropriate appointments in the future is arguably even greater when intentional misconduct has occurred." (citing *Linton*, 136 F.3d at 544–46)).

Each of the *Barton* Doctrine elements is met here. Absent some exception to

11

that Doctrine, the Court does not have subject matter jurisdiction over Mr.

Blixseth's claims.

### B.   The effect of the U.S. Supreme Court's decision in  *Stern v. Marshall*

Blixseth argues that the *Barton* Doctrine cannot be applied here because the

Bankruptcy Court is without jurisdiction under *Stern v. Marshall*, 131 S. Ct. 2594

(2011). In *Stern*, the U.S. Supreme Court held that bankruptcy courts may not issue

final judgments on "core," common-law or state-law claims. That holding, though,

does not bar application of the *Barton* Doctrine.

### 1.   The bankruptcy court's statutory decision-making authority

To understand the effect of *Stern*, one must first understand the bankruptcy

court's statutory decision-making authority.

Federal courts "have original and exclusive jurisdiction over all cases under

title 11" and "have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §

1334(a), (b); *Lazar v. Cal.*, 237 F.3d 967, 973 n.2 (9th Cir. 2001). "In other words,

those matters falling under the heading of concurrent jurisdiction (i.e., civil actions

involving claims that arise under or in or are related to Title 11 proceedings) may

be filed originally in state court, then subsequently removed by one of the parties to

federal district court." *Lazar*, 237 F.3d at 973 n.2 (internal quotation marks and citations omitted).

A district court may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy courts. 28 U.S.C. § 157(a). But the district court may withdraw that referral "for cause shown." *Id.* at 157(e).

The scope of a bankruptcy court's statutory decision-making authority depends on whether the case is a "core" proceeding or a "non-core" proceeding. 28 U.S.C. § 157. Bankruptcy courts have statutory authority to hear and render final judgments in "core" proceedings arising under Title 11 or arising in a case under Title 11. 28 U.S.C. § 157(b)(1). In "non-core" proceedings, though, bankruptcy courts cannot issue final judgments. Instead they may, if the parties consent, only issue findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1).

Section 157(b)(2) lists 16 examples of core proceedings (the list is not exhaustive).[3] Relevant here, one of those examples is "matters concerning the

---

[3] Under 28 U.S.C. § 157(b)(2), core proceedings include, but are not limited to:

(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the

administration of the estate." *Id.* at 157(b)(2)(A). The Ninth Circuit has expressly held that a plaintiff's common-law tort claims or state-law claims against a court-appointed officer for the officer's alleged misconduct in administering the estate constitute a core proceeding. *See e.g. In re Harris*, 590 F.3d 730, 738–41 (9th Cir. 2009); *In re Harris Pine Mills*, 44 F.3d 1431, 1438 (9th Cir. 1995); *see also In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987) (holding that a contract claim arising out of the trustee's sale of estate assets "falls within the literal wording of 28 U.S.C. § 157(b)(2)(A) 'matters concerning the administration of the

---

liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

estate,' because it involves a claim that arose out of the administrative activities of [the trustee]").

Here, all of Blixseth's claims against the various lawyers are core claims because they arise out Brown's alleged misconduct as Chair of the Committee, which involved "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

### 2. *Stern v. Marshall*

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the United States Supreme Court held that bankruptcy courts do not have constitutional authority to issue final judgments in core proceedings that are based on state- or common-law claims. Specifically, the Court concluded that, while a bankruptcy court had statutory authority to hear the estate's common-law counterclaim for tortious interference —a core proceeding under 28 U.S.C. § 157(b)(2)(C)—it did not have authority to hear the case under Article III of the United States Constitution, since only Article III judges have the power to hear cases "'at the common law, or in equity, or in admiralty.'" *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)).

The Bankruptcy Court for the District of Montana recently addressed the effect of *Stern* in the underlying bankruptcy proceeding here. *See Blixseth v.*

15

*Blixseth*, 2011 WL 3274042 at *10–*12 (Bankr. D. Mont. Aug. 1, 2011). There, a trustee had filed a fraudulent conveyance claim (among others) against Blixseth. The Bankruptcy Court concluded the proceeding was a core proceeding under § 157(b)(2)(H) ("proceedings to determine, avoid, or recover fraudulent conveyances"). But it reasoned that, under *Stern*, it could not issue a final judgment on the fraudulent conveyance claim because it was a core, common-law claim. *Blixseth*, 2011 WL 327042, *11–*12 (discussing *Stern*, 131 S. Ct. 2594).

To that extent, in my view, the Bankruptcy Court's reading of *Stern* is correct. A bankruptcy court cannot issue a final judgment on core, common-law or state-law claims. *See Ortiz v. Aurora*, 665 F.3d 906 (7th Cir. 2011) (holding that, under *Stern*, bankruptcy courts do not have authority to issue final judgments on core, state-law claims).

The Bankruptcy Court, though, went one step further. It concluded that it could not even address the fraudulent conveyance claim—e.g., by issuing proposed findings and conclusions—because it did not have statutory authority to do so:

> Unlike in non-core proceedings, a bankruptcy court has no statutory authority to render findings of fact and conclusions of law for core proceedings that it may not constitutionally hear. While 28 U.S.C. § 157(c)(1) allows a bankruptcy judge to render findings and conclusions in "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," no other code provision allows bankruptcy judges to do the same in core proceedings. Similarly, no provision allows

16

parties to consent to a bankruptcy court making final decisions in core proceedings as 28 U.S.C. § 157(c)(2) allows parties to consent for non-core proceedings. The code provides only that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Since this Court may not constitutionally hear the fraudulent conveyance claim as a core proceeding, and this Court does not have statutory authority to hear it as a non-core proceeding, it may in no case hear the claim.

*Id.*[4]

The Bankruptcy Court's reading of *Stern* is reasonable, but it leads to an odd

---

[4] The Bankruptcy Court later clarified that it does not view *Stern* as "jurisdictional." *See Sampson v. W. Capital Partns., LLC*, 2011 WL 6217416 at *3 (Bankr. D. Mont. Dec. 14, 2011) (discussing *Henderson v. Shinseki*, 131 S. Ct. 1197, 1201 (2011)); *Blixseth v. Kirschner*, AP 9–14, p. 5 (Dkt # 682) (Bankr. D. Mont. Dec. 13, 2011) (same). The Bankruptcy Court noted that a number of other courts have reached the same conclusion. *Blixseth*, AP 9–14 (Dkt # 682) (citing *Wilderness Crossings, LLC v. Classic Prods. Corp.*, 2011 WL 5417098 at *1 (Bankr. W.D. Mich. Nov. 8, 2011); *Bujak v. Canyon Co.*, 2011 WL 5326038 at *2 (Bankr. D. Idaho Nov. 3, 2011); *Sunra Coffee LLC v. Sunra Coffee LLC*, 2011 WL 4963155 at *4 (Bankr. D. Haw. Oct. 18, 2011); *Citron v. Citron*, 2011 WL 4711942 at *2 (Bankr. E.D.N.Y. Oct. 6, 2011)).

Whether *Stern* is jurisdictional, though, is a red herring for purposes of this case. To say that a rule is "jurisdictional" simply means that a court must employ that rule sua sponte at any point in the litigation and that the parties cannot waive or forfeit the rule's effect. *Gonzalez v. Thaler*, 132 S. Ct. 641, 648–49 (2012); *see also Sharifeh v. Fox*, 2012 WL 469980 at *5–*6 (N.D. Ill. Feb. 10, 2012). Here, Blixseth timely invoked *Stern*, and he has not waived its application. So, regardless of whether *Stern* is jurisdictional, it applies here. To say that a rule is not jurisdictional does not mean in my view that the rule confers jurisdiction, as the Bankruptcy Court seems to suggest. *See Sampson*, 2011 WL 6217416 at *3; *Blixseth*, AP 9–14, p. 5 (Dkt # 682).

result—Why, for example, would a bankruptcy court be permitted to issue

proposed findings and conclusions in a non-core proceeding, *see* 28 U.S.C. §

157(c)(1), but not a core proceeding, which, by definition, is more central to the

bankruptcy litigation?

Not only is this an odd result, it is probably not the result that the *Stern* Court

intended. *See Emerald Casino, Inc. v. Flynn*, 2012 WL 280724 (N.D. Ill. Jan. 31,

2012). The *Stern* Court expressed that its decision would not "meaningfully

change" or have any "practical consequences" on the courts' workload:

> [T]he current bankruptcy system also requires the district court to review
> *de novo* and enter final judgment on any matters that are "related to" the
> bankruptcy proceedings, § 157(c)(1), and permits the district court to
> withdraw from the bankruptcy court any referred case, proceeding, or
> part thereof, § 157(d). Pierce has not argued that the bankruptcy courts
> "are barred from 'hearing' all counterclaims" or proposing findings of
> fact and conclusions of law on those matters, but rather that it must be the
> district court that "finally decide[s]" them. We do not think the removal
> of counterclaims such as Vickie's from core bankruptcy jurisdiction
> meaningfully changes the division of labor in the current statute; we
> agree with the United States that the question presented here is a
> "narrow" one.

*Stern*, 131 S. Ct. at 2620.

*Stern*, then, suggests that bankruptcy courts may issue proposed findings of

fact and conclusions of law in core, common-law claims, so long as the district

court makes the final decision. The Northern District of Illinois recently reached

18

the same conclusion:

> A fair reading of this language [from *Stern*] is that a district court may choose to withdraw the reference, but that bankruptcy courts are permitted to hear counterclaims, and to propose a disposition, so long as it is the district court which makes any final decisions.
>
> The conclusion for which Defendants argue—that the bankruptcy judge may take no action at all on the Trustee's counterclaims—thus does not appear to be dictated by *Stern* . . . .

*Emerald Casino*, 2012 WL 280724 at *4–*5.

The *Emerald Casino* court then explained that to conclude otherwise would lead to a "'bizarre'" result:

> "A claim brought by the estate against a creditor who has not filed a claim against the estate would be within the bankruptcy court's related-to jurisdiction, but if the creditor later filed a claim in the bankruptcy case, then—although the estate's claim could have a major impact on the bankruptcy estate by offsetting the creditor's claim—the claim would now be a counterclaim under § 157(b)(2)(C), and bankruptcy court jurisdiction would be completely lost."

*Id.* (quoting *In re Emerald Casino, Inc.*, 459 B.R. 298, 300 n.1 (Bankr. N.D. Ill. Aug. 26, 2011)).

I agree. *Stern* does not bar the Bankruptcy Court from issuing proposed findings of fact and conclusions of law in this matter. It therefore does not bar application of the *Barton* Doctrine either. As a practical matter, the bankruptcy court's proposed findings and conclusions would be helpful to the district court,

given "the value of the bankruptcy judge's familiarity with relevant law and the facts of the case[ ] before [it]." *Emerald Casino*, 2012 WL 280724 at *5.

### C.     28 U.S.C. § 959(a) and 28 U.S.C. § 157(b)(5)

*Stern* aside, the parties discuss two statutory provisions that either provide an exception to the *Barton* Doctrine or bar its application altogether—28 U.S.C. § 959(a) and 28 U.S.C. § 157(b)(5). Neither of these statutes applies here, though.

The first provision—28 U.S.C. § 959(a)—codifies a long-standing exception to *Barton*. *See Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398–99 (9th Cir. 1970). It provides: "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). The Ninth Circuit has interpreted § 959(a) as applying "only if the . . . officer is actually operating the business, and only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *Med. Dev. Intl. v. Cal. Dept. of Corrs. & Rehab.*, 585 F.3d 1211, 1217–18 (9th Cir. 2009) (citations and internal quotation marks omitted).

The *Medical Development* court emphasized that § 959(a) applies only to the trustee's ongoing or continuous *operation* of the debtor's business. *Id.* It does not

20

apply to a trustee's or officer's court-ordered *administration* of the debtor's

property or estate—e.g., administering and liquidating a debtor's estate. *Id.*; *see*

*also Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004); *Carter*, 220 F.3d at

1253. The First Circuit explained that § 959(a) "is intended to permit actions

redressing torts committed in furtherance of the debtor's business, such as the

common situation of a negligence claim in a slip and fall case where a bankruptcy

trustee, for example, conducted a retail store." *Muratore*, 375 F.3d at 144 (citation

and internal quotations omitted). Here, since the thrust of Blixseth's claims are

based on Lawyer Brown's conduct as Chair of the Unsecured Creditors

Committee—and not the ongoing operation of any of Blixseth's businesses—§

959(a) does not apply.

The second provision—28 U.S.C. § 157(b)(5)—requires that certain actions

be "tried" in the district court, not the bankruptcy court:

> The district court shall order that personal injury tort and wrongful death
> claims shall be tried in the district court in which the bankruptcy case is
> pending, or in the district court in the district in which the claim arose,
> as determined by the district court in which the bankruptcy case is
> pending.

In *In re Marshall*, 600 F.3d 1037 (9th Cir. 2010)—the same case underlying

the Supreme Court's decision in *Stern*, 131 S. Ct. 2594—the Ninth Circuit held that

§ 157(b)(5) deprives a bankruptcy court of subject matter jurisdiction over any

"recognized tort," including non-physical-injury claims such as defamation and tortious interference. 600 F.3d at 1068–69. The Supreme Court disagreed, making clear that § 157(b)(5) does not deprive a bankruptcy court of jurisdiction over a "personal injury tort" claim. *Id.* at 2606. Thus, § 157(b)(5) does not prevent this Court from applying *Barton*.

CONCLUSION

All of Blixseth's claims are subject to the *Barton* Doctrine, and no exceptions apply. Since Blixseth did not first seek leave from the Bankruptcy Court before he filed his complaint in the district court, the Court does not have subject matter jurisdiction over his claims.

IT IS ORDERED that the motions to dismiss filed by James Patten (dkt # 18), Thomas Hutchinson (dkt # 26), J. Thomas Beckett (dkt # 29), and Stephen Brown (dkt # 34) are GRANTED IN PART and DENIED IN PART. The Court concludes that it does not have subject matter jurisdiction over Timothy Blixseth's claims. The Court GRANTS the motions to that extent. Blixseth's complaint (dkt #1) is therefore DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. The Court DENIES AS MOOT the defendants' claims under Federal Rule of Civil Procedure 12(b)(6).

IT IS FURTHER ORDERED that Samuel Byrne's motion to dismiss (dkt #

22

40) is DENIED AS MOOT.

Dated this 5th day of March 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT